UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:09-CR-144 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| DONALD FILLERS, *et al.* ) | |

**M E M O R A N D U M**

Before the Court is motion for a new trial under Fed. R. Crim. P. 33 filed by Defendants Donald Fillers and the Watkins Street Project, LLC (collectively "Defendants") (Court File No. 406). Defendants ask the Court to vacate their conviction for obstruction of justice under 18 U.S.C. § 1519, and order a new trial on this count. The government opposes the motion (Court File No. 408), and Defendants replied to the government's response (Court File No. 414). For the reasons discussed below, the Court will **DENY** Defendants' motion.

**I.    BACKGROUND**

Defendants were all charged with conspiracy to defraud the United States and violate the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.*, as well as with various violations of the CAA's asbestos work-practice standards. Defendants Fillers and Wood were additionally charged with making false statements, and Defendants Fillers and the Watkins Street Project were charged with obstruction of justice (Court File No. 1). The government called a number of witnesses over the course of a three-week trial, and at the close the government's proof, all Defendants filed a motion for acquittal pursuant to Fed. R. Crim. P. 29. The Court reserved ruling at that time. On January 30, 2012, the jury returned a verdict of guilty on all counts against all Defendants, with one

exception[1] (Court File Nos. 385-88). On March 1, 2012, the Court denied each Defendant's motion for acquittal (Court File Nos. 402, 403). Defendants Fillers and the Watkins Street Project then filed the motion currently before the Court.

Having discussed this case on a number of occasions in previous opinions,[2] the Court will not provide a separate recitation of the facts. Rather, the Court will discuss below facts related to the one count for which Defendants Fillers and the Watkins Street Project seek a new trial: obstruction of justice.

## II.  STANDARD OF REVIEW

Rule 33 of the Federal Rules of Criminal Procedure provides, upon a defendant's timely filed motion,[3] "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although the parties disagree to some extent on the proper interpretation of this standard, there is generally wide agreement in the case law. The most comprehensive statement of how to interpret the "interest of justice" standard in Rule 33, and how to distinguish it from a Rule 29 motion for acquittal comes from *United States v. Turner*, 490 F.Supp. 583 (E.D. Mich. 1979):

> A Motion for Acquittal and a Motion for New Trial based on the ground that the verdict is against the great weight of the evidence are governed by very different

---

[1] The jury found Defendant James Mathis not guilty on Count Four of the Indictment, which charged him with failing to have a trained individual present at the Standard Coosa Thatcher site.

[2] *See, e.g.*, Court File Nos. 219, 243, 310, 376, 401, and 402.

[3] Defendants timely filed their motion for a new trial. Within the 14-day period provided for in Rule 33, Defendants sought an extension to file a motion for a new trial (Court File No. 391), which the Court granted (Court File No. 393), permitting all Defendants two weeks from the Court's decision on all Defendants' motions for acquittal. The Court issued its ruling on each Defendant's motion under Rule 29 on March 1, 2012, and Defendants Fillers and the Watkins Street Project filed the motion currently before the Court on March 12, 2012.

2

> standards. The Motion for New Trial involves a much broader standard of review than a Motion for Acquittal. A verdict may well be against the great weight of the evidence, but, nevertheless, be substantial enough to permit reasonable jurors to draw an inference of guilt. In a Motion for New Trial, the trial judge can consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said that he/she sits as a thirteenth juror.

*Id.* at 593. Although it can sit as a thirteenth juror, a court should exercise its discretion to vacate a jury verdict and grant a new trial "only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *Id.* (citation omitted). *Turner*, which the United States Court of Appeals for the Sixth Circuit subsequently identified as correctly stating the Rule 33 standard, *see United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988) ("*Turner* does, indeed, disclose the appropriate standard for district courts to follow in ruling on motions for new trials based on the verdict's being against the great weight of the evidence.") (emphasis omitted); *United States v. Hughes*, 505 F.3d 578, 592-93 (6th Cir. 2007) (citing *Turner*), also counsels that motions for a new trial are disfavored, and should only be granted "with great caution." *Turner*, 490 F.Supp. at 593. The burden of proving the need for a new trial rests with Defendants. *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).

## III. DISCUSSION

In this motion for a new trial on their conviction for obstruction of justice, Defendants Fillers and the Watkins Street Project renew their arguments, made first in their motion for acquittal, centering of the lack of credibility of certain witnesses, focusing in particular on John Schultz, an employee of the Chattanooga-Hamilton County Air Pollution Control Bureau ("APCB"). Under this Rule 33 motion, however, the Court can–as it could not with Defendants' Rule 29 motion–consider the credibility of witnesses and weigh the relevant evidence. Notwithstanding this broader standard

3

of review, the Court, in its discretion, determines upholding the jury's verdict on Defendants' obstruction of justice conviction does not work a miscarriage of justice. Although the evidence in support of this count is not as strong as evidence supporting the other counts for which the jury convicted Defendants, the Court concludes the substantial evidence tending to show Defendants' conduct impeded the authorities' investigation of asbestos work-practice violations requires sustaining the jury's conviction on the obstruction of justice count.

### A. Elements of the Obstruction of Justice

The final count in the eleven-count Indictment charged Defendants Fillers and the Watkins Street Project, LLC with obstructing justice. To find Defendants guilty of this Count, the government had to prove the following elements beyond a reasonable doubt:

(1) Defendant knowingly altered, destroyed or concealed any record or document;
(2) Defendant acted with the intent to impede, obstruct, or influence the investigation or proper administration of a matter or in contemplation of or relation to any such matter; and
(3) The matter was within the jurisdiction of the Environmental Protection Agency ("EPA") and the Chattanooga-Hamilton County Air Pollution Control Bureau, which the defendant either knew of or contemplated.

*See* 18 U.S.C. § 1519. A defendant cannot escape criminal liability under this statute just because the investigation has not commenced. *Kernell*, 667 F.3d 746, 753 (6th Cir. 2012) (discussing *United States v. Yielding*, 657 F.3d 688, 711 (8th Cir. 2011)). Moreover, while the government must prove a defendant intended to impede or interfere with an investigation, it does not need to prove the defendant succeeded in obstructing an investigation or even believed he was likely to succeed. *Yielding*, 657 F.3d at 712.

### B. Evidence of Obstruction of Justice

During a three-week trial, the government put on evidence indicating Defendants in July

4

2003 purchased the Standard Coosa Thatcher ("SCT") facility in Chattanooga, Tennessee in order to demolish the facility and salvage for resale various commercial materials. As part of the demolition process, federal law required Defendants to abate asbestos within the building, and to follow certain procedures when conducting such abatement. The first step required of Defendants in this process was to have the building surveyed for any and all asbestos, and Defendants hired Alternative Actions, Inc. ("AAI") to conduct a survey of the SCT facility. The resulting AAI survey identified 6,126 linear feet of pipe insulation, 348 pipe fittings, 4,923 square feet of equipment insulation, 3,570 square feet of transite, 1,600 square feet of floor tile, and 2,440 square feet of oven insulation, all found with regulated asbestos-containing material ("RACM"). The final Count in the Indictment charged Defendants with obstructing justice by providing APCB with an incomplete version of this AAI survey. The Indictment alleges Fillers removed pages listing significant quantities of RACM with the intention of impeding EPA's and APCB's proper administration of the asbestos work-practice standards.

Defendants Fillers and Watkins Street Project vehemently contend a conviction on this Count is against the manifest weight of the evidence.[4] As in their oral motions for a judgment of acquittal, Defendants argue the evidence failed to show Fillers gave John Schultz of the APCB an incomplete survey, and further failed to show that, even if he had, Fillers did so in order to impede an investigation. Defendants claim the evidence only shows Schultz was in Fillers's office at the time Fillers and his wife were looking for the survey, and that Schultz was ultimately unsure whether it was Fillers or his wife that gave him the survey–an uncertainty that suggests Schultz's testimony

---

[4] In his oral motion for judgment of acquittal, counsel for Watkins Street Project, LLC described Count Eleven as an "extremely weak count that should never have been brought."

lacks credibility.  Moreover, Defendants assert, Schultz's testimony was vague, incomplete, and inconsistent.  In their current motion, Defendants further contend Eva Pate, of Pates Construction and Demolition, was mistaken in her belief Fillers had provided her with an incomplete survey.  Finally, Defendants argue Kathy Jones, also of APCB, is a biased and incredible witness, and therefore any testimony of hers that supports this count should be discounted.  Taken together, Defendants claim, the lack of evidence on Count 11 should lead the Court to vacate the conviction and order a new trial.

The government disagrees with Defendants' characterization of the evidence at trial.  Emphasizing the absence of any dispute that APCB received an altered AAI survey, the government claims Defendants fixate on Schultz's testimony and neglect considerable additional evidence supporting the obstruction of justice count.  In particular, the government points to testimony from Kathy Jones, Eva Pate, and Halbert Warden all indicating Fillers refused to provide a complete copy of the AAI survey, from which one could determine Fillers was seeking to minimize the likelihood any of these parties discovering–and perhaps reporting to authorities–the discrepancy between the amount of RACM according to the AAI survey and the portion of the SCT facility actually abated.  Attached to the government's response is a complete copy of the AAI survey on which the government has highlighted those portions that were omitted when it was given to Schultz[5] and Pate.  The omissions in each copy, the government contends, were targeted to Pate and Schultz: Pate's copy only showed results for a boiler room that Fillers had already had abated (suggesting all

---

[5] Given Schultz's confusion on the stand regarding which version of the AAI survey he actually received and which pages were missing, the government has highlighted in different colors those portions missing in the copy he initialed and those portions missing according to his trial testimony.

6

necessary abatement had occurred), and Schultz's copy–regardless of which incomplete copy he received–proved misleading precisely because it was incomplete. Stated concisely, in the government's view, Defendants' myopic focus on Schultz's admittedly confused testimony ignores substantial evidence on the record supporting the jury's decision to convict Fillers and the Watkins Street Project for obstruction of justice.

As an initial matter, and consistent with this Court's early ruling on the motion for acquittal, the Court agrees with Defendants' claims that Schultz's testimony lacked the usual hallmarks of credibility. Schultz's testimony was equivocal and at times contradictory. He appeared at one time to testify Fillers had submitted the survey to him, and then he appeared to suggest it may have been Fillers's wife. On direct examination he testified the survey was altered, but when cross-examined, Schultz appeared, if not to recant this testimony, at least to acknowledge that he was no longer entirely sure. In brief, Schultz was not one of the government's more convincing witnesses.

But as the Court noted in its earlier ruling, that Schultz was not a better witness for the government does not in itself render the evidence insufficient for a conviction on Count Eleven. More relevantly here, the obstruction of justice count does not rise or fall on the quality (or lack thereof) of Schultz's testimony as a government witness alone. Schultz's confusion on the stand makes his less testimony less credible, but not so much so the Court–or the jury–must discount everything he said. His failure to remember which pages of the AAI survey were missing is troubling, but the fact remains he, as an official from a government entity tasked with overseeing asbestos abatement work, received an incomplete survey. Given Fillers and the Watkins Street Project initially commissioned the AAI Survey, whether Schultz received that incomplete survey from Fillers himself or Fillers's wife does not strike the Court–and quite possibly did not strike the

7

jury–as material. In brief, in spite of the inconsistencies and contradictions in Schultz's testimony, it offers some evidence tending to support the government's obstruction of justice theory.

To sustain a conviction of Fillers and the Watkins Street Project for obstruction of justice, the government needed to prove (1) that Fillers knowingly deleted or altered the AAI survey information (2) with the intent to impede, obstruct or influence an investigation within the jurisdiction of the Environmental Protection Agency ("EPA") or APCB that (3) he contemplated at the time of the deletion or alteration. *See Kernell*, 667 F.3d at 756. As the Court observed in its ruling on Defendants' motions for judgment of acquittal, there is no dispute here AAI received an altered survey. Although the government did not offer direct evidence Fillers knowingly altered that survey, circumstantial evidence supports finding that Fillers and the Watkins Street Project had the survey conducted and maintained possession of it.[6] The AAI survey did not alter itself. Thus, the Court is satisfied the circumstantial evidence in the case supports the first element.

On the second element, Fillers's intent to impede a future investigation need not be based only on Schultz's testimony. The Court credits the testimony of Eva Pate, Halbert Warden, and Kathy Jones indicating Fillers was resistant to sharing the survey, along with the further implication such resistance provided circumstantial evidence Fillers sought to impede any future investigation by APCB or the EPA. *See Kernell*, 667 f.3d at 753 ("The statute . . . does not allow a defendant to escape liability for [altering] documents with intent to obstruct a foreseeable investigation of a matter within the jurisdiction of a federal agency just because the investigation has not yet

---

[6] Defendants made much at trial of the fact that Gary, not Don, Fillers was listed as the addressee of AAI's letter and survey. The jury could nonetheless have concluded Don Fillers received, read, maintained possession–and altered–the survey. The Court concurs in this conclusion.

8

commenced.") (quoting *Yielding*, 657 F.3d at 711).[7] Even though cross-examination of each of these witnesses exposed some credibility concerns, all three–in addition to Schultz–testified regarding the difficulty of ever acquiring a true and complete copy of the AAI survey from Fillers. Jones's testimony that she repeatedly sought to obtain the AAI survey from either Fillers or the Watkins Street Project is among the most damning, because she was an APCB regulator like Schultz.[8] Thus, Fillers's unwillingness to share a survey with Jones provides additional circumstantial evidence supporting the theory he was intentionally impeding an investigation within the jurisdiction of APCB or EPA.

Moreover, while Defendants' claim Fillers could not have knowingly altered the AAI survey with the intent to impede any investigation because Schultz was in his office at the time Schultz received the survey bears a modicum of plausibility,[9] another reading of this testimony is that Fillers was searching for the version of the AAI survey he wanted Schultz to have. The government submitted evidence at trial, which it emphasized again in its response to Defendants' current motion, showing various incomplete versions of the AAI survey had been made available to different individuals.[10] The jury may have concluded from this evidence Fillers wanted to make sure Schultz

---

[7] Thus, even if no investigation had begun at the time Fillers submitted the altered the survey to APCB, evidence supported the theory he nonetheless intended to impede any future investigation.

[8] Defendants assert Jones was "obviously biased" and suffered from a "defective memory" (Court File No. 4, p. 6). Defendants do not, however, provide support for these assertions.

[9] In reply to the government's response, Defendants note that given the disarray in his office, Fillers was lucky to locate the AAI survey at all, seemingly suggesting the incomplete survey Schultz received was a result not of an intent to mislead Schultz or impede any ongoing or future investigation, but of Fillers's disorganization (*see* Court File No. 414, p. 4).

[10] The evidence also showed a number of individuals and companies who appear to have received complete copies of the AAI survey.

only received an altered copy of the AAI survey that (falsely) presented the abatement efforts at the SCT facility as in compliance with asbestos work-practice standards. In its position as the thirteen juror, the Court would not unsettle this conclusion.

Finally, much of the evidence already discussed can be marshaled to support the third element the government needed to prove: that Fillers and the Watkins Street Project contemplated a possible investigation at the time of the alteration of the AAI survey. *See Kernell*, 667 F.3d at 756. On this third element, the government need not prove the investigation had begun or that Defendants believed they were likely to succeed in an effort to impede or obstruct an investigation. *Id.* at 753; *Yielding*, 657 F.3d at 712. The evidence showing Fillers was resistant to sharing the AAI survey suggests a concern about possibly incriminating information being available for investigators to find. In addition, the fact Fillers verbally amended the AAI survey in his conversation with Kathy Jones at APCB–albeit only to make a partial correction–is properly considered circumstantial evidence to show he contemplated a possible investigation by APCB or EPA at that time. Whether he believed such efforts at obfuscation would succeed in forestalling an investigation, or stymying one when and if it began, is not a relevant consideration. *Kernell*, 667 F.3d at 753.

As the Court noted when ruling on Defendant's Rule 29 motion, the evidence offered by the government in support of this obstruction of justice count is slim. But–and as the Court also observed–slim evidence can justify a conviction, so long as that evidence is sufficient to convict a defendant beyond a reasonable doubt. While slim, the evidence on this count does not "preponderate heavily against" the jury's guilty verdict so as to warrant ordering a new trial, especially as such orders are disfavored and ought only to be granted "with great caution." *Turner*, 490 F.Supp. at 593. Thus, sitting as the thirteenth juror, the Court concludes Defendants have not

met their burden of showing a new trial is needed on Count 11 of the Indictment.

**IV.     CONCLUSION**

For the reasons discussed above, the Court will **DENY** Defendants' motion for a new trial for the obstruction of justice count pursuant to Fed. R. Crim. P. 33.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**